UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT BARLETT, individually and on behalf of other similarly situated SWAT team members on the Chicago Police Department, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, <br><br> Defendant. | 14 C 7225 |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion of Defendant City of Chicago (the "City") to dismiss the first amended complaint brought by Plaintiff Robert Bartlett ("Bartlett"), individually, and on behalf of other similarly situated SWAT team members of the Chicago Police Department (the "CPD") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the City's motion to dismiss is denied.

## BACKGROUND

For the purposes of the instant motion, the following well-pleaded allegations derived from Bartlett's first amended complaint are accepted as true. The Court draws all reasonable inferences in favor of Bartlett. The City is a municipal corporation organized under the laws of the State of Illinois. The CPD is a public

agency of the City. The City employs Bartlett as a police officer on the CPD's SWAT team.

On November 7, 2014, Bartlett filed his first amended complaint as a putative class action, seeking relief under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 216(b) (Count I), the Illinois Wage Payment Collection Act (the "IWPCA"), as amended, § 820 ILCS 115/1, *et seq.* (Count II), and the Illinois Minimum Wage Law (the "IMWL"), 820 ILCS 105/4(a) (Count III) for unpaid compensation, unpaid overtime compensation, liquidated damages, costs, attorneys' fees, declaratory and injunctive relief, and any such other relief the Court may deem appropriate. Jurisdiction is proper under 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331, 1337 and 1367(a).

On November 14, 2014, the City moved to dismiss Count II of Bartlett's first amended complaint. In Count II, Bartlett alleges that over the past three years, the City has willfully violated the IWPCA by intentionally failing and refusing to pay Bartlett all compensation due to him under the IWPCA and implementing unlawful regulations. Upon information and belief, Bartlett claims that the City has operated a scheme and administered a compensation system that has failed to provide hourly compensation and premium overtime compensation to employees that work while "off the clock." As a result of the City's unlawful practice, Bartlett's rights under the IWPCA were willfully violated because the City was aware, or should have been aware, of its obligations under the IWPCA.

This alleged scheme consisted of the City providing Bartlett with operating procedures, which restricted him from: (i) leaving his personal vehicle unattended while his SWAT gear and weapons were inside the vehicles; and (ii) having any non-police personnel in his personal vehicle while transporting SWAT gear and weapons to and from work. The CPD, under the guidance of the City, also required that Bartlett be available to answer and respond to assignments with his SWAT gear and weapons in his personal vehicles in order to reduce response times. Bartlett contends that he received no compensation, wages, or mileage expenses from the City for the use of his personal vehicle.

Attached to the first amended complaint is the collective bargaining agreement (the "CBA"), which states that the City will provide overtime compensation for "[a]ll time in excess of the hours worked in the normal work day (8 hours) and the normal work week (40 hours) shall be compensated as provided in Section 20.2." Section 20.2 states:

> [a]ll approved overtime in excess of the hours required of an officer by reason of the officer's regular duty, whether of an emergency nature or of a non-emergency nature, shall be compensated for at the rate of time-and-one-half. Such time shall be computed on the basis of completed fifteen (15)-minute segments. An officer who earns overtime pursuant to the federal Fair Labor Standards Act (FLSA) shall be paid overtime compensation at the FLSA rate agreed upon by the parties. An officer who earns non-FLSA overtime shall have the option of electing pay or compensatory time consistent with the provisions of this Agreement.

Section 9.1 in the CBA, entitled "Grievance Procedure," describes how the grievance process works, and defines a grievance as "a dispute or difference between

the parties to this Agreement concerning interpretation and/or application of this Agreement or its provisions." Section 9.2, entitled "Procedures, Steps and Time Limits for Standard Grievances" establishes that "[a] grievance may be initiated by the Lodge or an aggrieved officer." Section 9.11, entitled "Exhaustion" states that "it is the intent of the parties to this Agreement that the procedures set forth in this Article shall be mandatory as to any grievance unless expressly and specifically excluded by the terms of this Agreement."

On December 9, 2014, Bartlett responded to the instant motion. On December 23, 2014, the City filed its reply.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint and not the merits of the case. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations but must provide enough factual support to raise her right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must allow the court to draw the reasonable inference that the defendant is liable for the purported misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claims must be described "in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests."

*EEOC v. Concentra Health Services*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *Id.* at 678.

## DISCUSSION

The City provides two reasons for why the Court should dismiss Count II of Bartlett's first amended complaint. First, the City insists that Bartlett does not, and cannot, identify any promise or agreement by the City to pay for normal home to work travel time to support his claim under the IWPCA. Second, the City argues that the IWPCA claim is preempted, and is not an independent state-created right.

### I.     Promise or Agreement

The IWPCA states that wages "shall be defined as any compensation owed an employee by an employer *pursuant to an employment contract or agreement* between the two parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2 (2006) (emphasis added). To prevail on an IWPCA claim, Bartlett must show that he had a valid contract or employment agreement. *See Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012). An "agreement" under the IWPCA is "broader than a contract" and "requires only a manifestation of mutual assent on the part of two or more persons." *Hess*, 668 F.3d at 452 (quoting *Zabinsky v. Gelber Grp., Inc.*, 807 N.E. 2d 666, 671 (2004). The IWPCA requires "that the employer honor his contract;" it does not, however, confer

rights to compensation that are absent from the employee's contract or employment agreement. *See In re Comdisco, Inc.*, No. 02 C 7030, 2003 WL 685645, at *3 (N.D. Ill. Feb. 27, 2003) (quoting *National Metalcrafters v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1986)). A violation of the FLSA or the IMWL alone, without a corresponding violation of an employment contract or agreement, therefore, cannot establish a violation of the IWPCA. *See Palmer v. Great Dane Trailers*, No. 05 C 1410, 2005 WL 1528255, at *4 (N.D. Ill. June 28, 2005) (dismissing the plaintiff's IWPCA claim because she failed to allege that an agreement required her employer to pay overtime and, thus, "the correct route for [plaintiff] to obtain earned pay, including potential overtime pay, [was] through timely FLSA and IMWL claims," not the IWPCA). Instead, to survive dismissal, the plaintiff must point to an agreement supporting the IWPCA claim that is more than an allegation that the employer is bound by existing overtime laws. *See Palmer*, 2005 WL 1528255, at *4.

In its initial argument, the City avers that Bartlett cannot bring an action under the IWPCA because Bartlett does not identify a promise or agreement by the City to pay for normal home to work travel time in his first amended complaint. The City contends that even though Bartlett states in his response that the parties entered an agreement to pay Bartlett wages for hours worked, the actual language in the CBA states otherwise. The City also argues that the first amended complaint contains no allegations that the City did not honor its promise to pay overtime compensation for "approved" overtime.

As support, the City cites to *Brown v. Lululemon Athletica, Inc.*, 10 C 05672, 2011 WL 741254, at *3 (N.D. Ill. Feb. 24, 2011), where the court dismissed the plaintiff's IWPCA without prejudice because she failed to allege that the parties agreed that the defendant would compensate her for the activities at issues (attending staff meetings, taking one exercise class per week, and listening to a motivational CD). The court in *Brown* found that "[it] is well established that an employee can have no claim under the IWPCA unless the employer and employee agreed that the former would compensate the latter for the particular work allegedly performed." *Brown*, 2011 WL 741254, at *3 (collecting cases). *Brown* is distinguishable from the instant matter for this reason—the plaintiff in *Brown* made no reference in her complaint to an agreement that elicited how she was paid, which may have been sufficient to raise an inference that the parties had entered into an employment agreement to pay her in that manner. The court explicitly granted the motion to dismiss without prejudice, allowing the plaintiff to re-file her IWPCA claim if she desired.

In the instant matter, the City's contention that its motion to dismiss should be granted because Bartlett and the City needed to have an agreement or contract that explicitly outlined that the City would pay him for his time spent traveling to and from home and work, whether as wages or overtime, is incorrect. Such specificity is not required to allege a claim under the IWPCA. Therefore, at this stage of the proceedings, Bartlett has sufficiently pleaded that there was a wage agreement,

beyond a mere allegation that the employer is bound by overtime laws, by alleging that: (i) he was an employee covered by the protections of the IWPCA; (ii) the City had knowledge that Bartlett performed work that required payment of wages and/or overtime compensation; and (iii) that the parties entered into an agreement, which he attached, to pay Bartlett wages and/or overtime for hours worked. These allegations, collectively, create an inference that the City and Bartlett had a valid employment agreement.

## II. Preemption

The City also argues that Bartlett's IWPCA claim is preempted and that he should be required to pursue his claim in accordance with the grievance procedure outlined in the CBA. Bartlett disagrees, and insists that the CBA makes no specific mention that he must resort to the grievance procedure prior to filing an IWPCA claim with this Court.

If preempted, Bartlett's claim would have to be brought under Section 301 of the Labor Management Relations Act ("Section 301"), 29 U.S.C. § 185(a), which requires employees to exhaust grievances and arbitration remedies provided in the CBA before filing suit. *Hernandez v. Cottrell, Inc.*, No. 10 C 1522, 2012 WL 4009696, at *2 (N.D. Ill. Sept. 12, 2012). Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees * * * may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Bartlett does not allege that he has

exhausted any grievance procedure, and therefore the only issue before the Court is whether his IWPCA claim is preempted.

Whether Section 301 operates to preempt a particular state-law claim requires "case-by-case factual analysis." *In re Bentz Metal Prods. Co. Inc.*, 253 F.3d 283, 285 (7th Cir. 2001) (en banc). "If the resolution of a state law claim depends on the meaning of, or requires the interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute." *Atchley v. Heritage Cable Vision Assocs., Inc.*, 101 F.3d 495, 499 (7th Cir. 1996) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988)). "To determine whether a state-law claim is pre-empted, we must look at the legal character of the claim: a question of state law, entirely independent of any understanding embodied in the collective bargaining agreement, may go forward as a state-law claim, whereas a claim, the resolution of which is sufficiently dependent on an interpretation of the [collective bargaining agreement], will be preempted." *Baker v. Kingsley*, 387 F.3d 649, 657 (7th Cir. 2004) (quotations and citations omitted). Put simply, preemption will not occur if a dispute merely references or requires consultation of a collective bargaining agreement. *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994); *see Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985) (The Supreme Court has cautioned, however that, "not every dispute concerning employment, or tangentially involving a provision of a collective

bargaining agreement, is preempted by § 301 or other provisions of the federal labor law.")

"Federal preemption of state laws has generally applied when 'state laws create a risk of taking away employee rights provided by collective bargaining or becoming entangled in the collective bargaining process, not when state laws add a right that is independent from the agreement.'" *Spoerle v. Kraft*, 626 F. Supp. 2d 913, 921 (W.D. Wis. 2009) *aff'd*, 614 F.3d 427 (7th Cir. 2010) (citing *Livadas*, 512 U.S. at 118). Section 301 does not convert state law complaints into federal claims merely because the parties have entered into a CBA. *Whitmore v. Kraft Foods Global, Inc.*, 798 F. Supp. 2d 917, 925 (N.D. Ill. 2011). "It is well settled that if a CBA establishes a grievance and arbitration procedure for the redress of employee complaints, employees wishing to assert a claim based on a CBA must first exhaust the grievance procedure before resorting to a judicial remedy." *McCoy v. Maytag Corp.*, 495 F.3d 515, 524 (7th Cir. 2007).

In the instant matter, Bartlett attempts to enforce contractual wage obligations by means of a state law IWPCA claim, which would allow him to enforce his independent state-created rights and forego enforcement of CBA-created rights and the grievance procedure. The City argues that Bartlett's IWPCA claim is preempted by Section 301, and specifically identifies which provisions would necessitate an interpretation of the CBA. This includes, amongst others, the interpretation of "approved overtime," the custom and practice of the parties in implementing these

provisions, and a decision as to whether the uncompensated time that Bartlett spends restricted from having any non-police personnel in his personal vehicle or leaving his vehicle unattended while his SWAT gear is inside his personal vehicle is compensable under the CBA. The City believes that the interpretation of whether the work Bartlett alleges is compensable under the CBA should be pursued through the grievance procedure and conducted by an arbitrator, who has a better understanding of the meaning of the provisions at issue in the context of the specific bargaining relationship between the parties. *See Jonites v. Exelon Corp.*, 522 F.3d 721, 726 (7th Cir. 2008); *see also Leahy v. City of Chicago*, 96 F.3d 228, 234 (7th Cir. 1996) (where the Seventh Circuit found that the determination of whether a worker "worked" during his lunch break was for the arbitrator to decide).

Additionally, the City argues that the IWPCA claim is preempted by the Illinois Public Labor Relations Act, 5 ILCS 315, *et seq.*, which confers exclusive jurisdiction on the Illinois State Labor Relations Board over matters involving CBAs. The City also maintains that pursuant to Illinois law, Bartlett generally may not assert a statutory claim whose subject overlaps an applicable CBA. *See Glinski v. City of Chicago*, No. 99 C 3063, 2001 WL 109540, at *4 (N.D. Ill. Feb. 5, 2001) (citations omitted).

Throughout his first amended complaint, Bartlett alleges that the City has violated the IWPCA by failing to pay him all wages, and that the City administered an unlawful compensation system that has failed to provide him compensation for hours

worked in a given period. He does attach the CBA as the wage agreement between the parties, and this could be perceived as overlapping, or intertwining his IWPCA claim with the CBA—causing a requisite interpretation of the CBA, and therefore preemption of the claim. However, a mere reference or necessary consultation of the CBA does not trigger preemption. *See Livadas*, 512 U.S. at 125. Bartlett does not ask this Court to: (i) make a determination as to the wages owed to him under the CBA; (ii) define compensable work; or (iii) allege that the City violated the CBA. Rather, his claim is premised on the determination of whether the City violated the IWPCA by failing to pay him in accordance with the statute, and by willfully, intentionally, and wrongfully violating its statutory obligations. Because Bartlett only wishes to pursue his remedies under the IWPCA, or any entitlement he has under Illinois law, the Court holds that at this stage in the proceedings, he has properly pleaded a freestanding, independent statutory right. *See Mitchell v. JCG Indus.*, 842 F. Supp.2d 1080, 1086 (N.D. Ill. 2012) ("[T]he alleged absence of a meritorious basis to bring the claim . . . is a separate issue from preemption."). This matter does not currently involve an interpretation of the CBA and thus, his IWCPA claim is not preempted.

Also, the CBA, to which Bartlett adheres[1], defines a grievance as "a dispute or difference between the parties to this Agreement concerning interpretation and/or

---

[1] Although Bartlett argues that the inclusion of "[a] grievance may be initiated by the Lodge or an aggrieved officer" does not explicitly waive his right to sue under the IWPCA, he takes this sentence out of context. The Court finds that the inclusion of "[a] grievance may be initiated by the Lodge or an aggrieved officer" under the "Procedures, Steps and Time Limits for Standard Grievances" section refers to who can initiate a grievance procedure, not whether or not initiating the procedure is mandatory or permissive.

application of this Agreement or its provisions." The CBA also sets forth that "it is the intent of the parties to this Agreement that the procedures set forth in this Article shall be mandatory as to any grievance unless expressly and specifically excluded by the terms of this Agreement." Bartlett is not suggesting to the Court that he contests the interpretation and/or application of the CBA or its provisions; instead he seeks to enforce an individual statutory right as a judicial remedy, separate from the CBA. *See Jonites*, 522 F.3d at 725 ("nor is consent to be represented in collective bargaining realistically the equivalent of consent to the union's waiving a worker's individual statutory rights"); *see also Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998) (a union cannot waive a worker's individual statutory right unless the "union-negotiated waiver of employees' statutory right to a judicial forum" is "explicit."); *see also 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009) (holding that "[a] collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law.").

After reviewing many similar cases to the instant one, we could not describe the situation more soundly than the court in *Hawkins v. Securitas Sec. Services USA, Inc*.

> [i]t does not matter whether Plaintiffs' decision to forego their CBA rights in this lawsuit is wise or foolish, strategically wise or shortsighted, or consistent or inconsistent with the wishes of their union. All that matters is that Plaintiffs are content with enforcing their statutory rights and willing to leave their additional CBA rights on the table—certainly for purposes of this case, and perhaps forever if issue preclusion prevents them from later seeking to enforce the CBA for time periods covered by this suit. The mere existence of

those additional CBA rights will not require the court to interpret the CBAs when resolving the IMWL claim, and thus do not result in preemption."

2011 WL 5122679, at *5 (N.D. Ill. Oct. 28, 2011).

It is important to note that although Bartlett may continually disavow any reliance on the CBA in pursuing his IWPCA claim, if he chooses to take a contrary position in the future that would require an interpretation of the CBA, preemption of the claim may be warranted. However, at this time, taking his well-pleaded facts as true, Section 301 does not preempt Bartlett's IWPCA claim, and the City's motion to dismiss is denied.

## CONCLUSION

For the aforementioned reasons, the City's motion to dismiss Count II is denied.

*[signature]*
_____
Charles P. Kocoras
United States District Judge

Dated:  1/9/2015